I'm attorney Nora E. Milner and I represent the petitioner in this case, Paulino Rivera-Delgado. I would like to reserve a couple of minutes for rebuttal, please, if I could. This court is aware that this has had a fairly long and tortuous history, so I would like to condense this case down into three key issues for the court to review today. The first, what I believe to be the key issue in this case is what is the effect of the vacation of judgment, which is void ab initio in this case? In February of 2006, a superior court of the state of California, as this court is aware, vacated the judgment of Penal Code section 422 for Mr. Rivera-Delgado based on a violation of his 5th, 6th, and 14th Amendment constitutional rights. And what was the state of the immigration case at that point? Your Honor, at that time... I'll leave it for one round, but what about the second round? Yes, at that time, Your Honor, Mr. Rivera-Delgado had been ordered removed in 1999, re-entered, and was re-cited through the immigration court. That court had denied and pre-terminated all applications for relief, and he had gone through the appeal process with the Board of Immigration Appeals, and his case was currently pending before this court at that time. What occasioned the vacator? The vacator, Your Honor, was done as a collateral attack, as a statutory motion to vacate in the superior court of the state of California based on those violations, and they went directly to the merits. I didn't hear you. I'm sorry? On what? It was a statutory motion to vacate. What was the... Filed in the superior court... And what was the termination based on? The termination was based on a violation of First Amendment... First was the Fifth Amendment, the Sixth Amendment right to counsel, and, of course, the 14th Amendment due process. Primarily... Like a habeas? It was filed as a statutory motion, Your Honor. It was not a habeas, and it was not an error quorum nobis. It was filed as a statutory motion in the superior court. As you are probably well aware, he is fairly disinclined to overturn criminal convictions. But in this case, they felt that the violations of his constitutional rights were so egregious... Have you gone back to the agency with this at all? I'm sorry, Your Honor? Have you gone before the agency in any form with this? We have not requested a return to the agency, no, Your Honor. Wouldn't that have been... I mean, what I'm concerned about is whether you're going to have a timeliness problem now. Why didn't you just go back in 2006 with a motion to reopen at that point for new information? Your Honor, we did file a motion to remand with this court, to remand back to the board, in fact, for that procedure. And that matter was opposed by Respondent, and, therefore, this matter remained before the court. And that's the reason why the administrative agency has not had an opportunity to review this matter. There was no barrier to filing a motion to reopen. I'm sorry? There was no barrier to filing a motion to reopen. That's true, Your Honor. We filed a motion to remand, requesting that it be remanded, but it has not been done. Is the state adjudication final? I mean, did the state appeal the vacation order? It is, Your Honor. It has been rendered as a final decision, and there has been no appeal by the State of California on that matter. Now, that is not going to undo in any manner, it seems to me, no matter what we do with that, the first removal, as to which there was a determination of an aggravated felony, and it wasn't appealed, and that was the end of that, and he was, in fact, removed. And one of the things I don't understand about this case is why, on the second removal, they didn't allege aggravated felony again. They alleged CIMT, but for the same crime. The second filing with the Immigration Court, Your Honor, did allege that he was previously removed for a crime of moral turpitude. That's correct. I think that's some statute for why it had to be set up that way. I'm not sure. That was pretty much up to the government to allege. Well, was that the reason the immigration judge gave for not considering the application for waiver? I mean, it was really set up to be the same, based on the prior removal, and the issue was, well, can I consider an application for waiver? And the answer is, given by the IJ at the time, no, I can't, because if it's a crime of moral turpitude, it's also disqualified over here, and there's no getting around that one. So it was the cutting it short that caused the immigration judge to move the moral turpitude issue. That's correct, Your Honor, and also the immigration judge pre-terminated all applications, so no applications were ever filed with the Immigration Court. No record was ever created because all applications were pre-terminated. So we ask the question or confirm that you haven't yet. Is there anything that precludes you at this point from filing a motion to reopen with the PIA or seeking the government's stipulation for such a motion? There would be nothing stopping us from filing the motion, Your Honor, except that we would expect a vigorous opposition from the government. DHS is not inclined to join any joint motions to reopen. We could certainly pursue it, but I'm not inclined to believe that they would go along with it. Our problem is we're not fact-finders, and there's nothing in the administrative record that's officially before us that advises us even of what we've been talking about for the last five minutes. So don't you need to make a record at least so that you can try to bring that before a court? Your Honor, the order vacating judgment was submitted to this court as a part of our request to remand. But not as part of the record that's before us for consideration. We understand this with your motion. We know about it. The government hasn't denied its existence, so maybe we can take some cognizance of it. But the law is very clear that we can act only on the administrative record, and right now that's not part of it. And the reason for that, Your Honor, is at the time the administrative record was created, the order vacating had not yet happened. I know why it's not there, but you need to know what our problem is, too, and you may need to do something to put it within an administrative record before this court can act on it. Correct. That was the purpose, essentially, of our request to remand. The fact, responding to the previous question regarding really the purpose or the meaning of the vacation of judgment ab initio, our argument is that once that judgment was void at ab initio, the removal order upon which it was based is also void. Any consequences that flowed from that? That I don't see. I mean, that seems difficult to me because it was a final removal order. It wasn't appealed. And he was, in fact, you're talking about the first or the second removal order? I'm talking about the first removal order. I can't see that. Well, the vacation goes back, void ab initio, to the actual. It matters because the second one was premised on him having been removed the first time? Correct. The second one, the second removal order, was basically a very brief removal order just pretermitting all applications based on the finding of unavailability and any relief. Because he had been removed first? Because he had previously been removed. The vacation order, in our opinion, goes back, ab initio, back, essentially as a note pro ton, back to the beginning of the original conviction. I don't understand that at all, that a finished, executed removal order can disappear if the underlying crime is then eliminated. It is, Your Honor. Our argument is that it does. But do you have any authority for that? Yes, we do, Your Honor. In fact, this Court has held in a number of cases, in a case called Cardozo-Tlaseka, which was held by this Court in 2006, that even under some circumstances, even a motion to reopen a deportation proceeding can be pursued, even after the alien has been deported, if the conviction is later found to be invalid. But that came out of a motion to reopen. And part of my problem is that I understand the logic of saying, look, we deserve a do-over because the conviction that caused my removal doesn't exist anymore. It's void ab initio. But ordinarily, that application goes to whoever it was that entered the removal order. That's not us. So is there any authority that speaks to our ability to give you the relief that you've sought? I'll be honest, I haven't found anything that says that. Your Honor, there have been several cases recognizing – I'll finish, but I had reserved two minutes, Your Honor, if I would like to respond to your question. There have been several cases recognizing the ability to collaterally attack. We are not asking this Court to relitigate the aggravated felony. That's been done in a court of proper venue. We are only asking this Court to recognize that once the collateral attack took place and the case was voided ab initio, any consequences of that void are also void. I think we understand your argument, and you've got about a minute for rebuttal. We'll hear from the government at this time, from the Attorney General. Mr. Markell? Good morning, Your Honors. May it please the Court, my name is Justin Markell, and I represent the Attorney General in this matter. Why don't you turn the microphone up a little bit? It probably wasn't meant for someone as tall as you. Is that better? And speak up a little bit. Sure thing. In this case, Petitioner does not contest the fact that in 1999 he was found guilty of committing an aggravated felony and removed. He waived appeal of that decision and then reentered the country within a month of his removal. Petitioner also does not contest the fact that in 2002, after his reentry into the United States, he was found President of the United States without being admitted or paroled. I mention these facts because I believe it's important that the Court focus its attention on the underlying basis of this order of removal in this case, which is Petitioner's presence in the United States without being admitted or paroled. What does the CIMT have to do with it? In the current removal, why was there also an allegation of the crime of immoral turpitude? The only way that relates to the current decision is, in this case, the immigration judge determined that Petitioner was not eligible for 245A, Adjustment of Status. In particular, it was the I-212 form, which is permission to reenter after removal. In order to be granted a non-protonic I-212 relief, it has to result in a complete disposition of his case. In this case, because there's two bases for his inadmissibility, his presence in the United States without being admitted or paroled, and also the fact that he was convicted of a crime of immoral turpitude. He was a lawful permanent resident at the time of conviction, wasn't he? Yes, he was. And what is the government's position on the vacation ab initio of the conviction? Well, it's the government's position that this Court does not have jurisdiction to review it because it was not submitted in the record earlier. I think we understand that. But what's your position if they move to reopen? Well, if they move to reopen, it's the government's position that it's the Board's place to determine the effect of this vacated decision. Will you stipulate to letting the Board reopen it? No, I'm not stipulating to that. But you say it's the Board's position to do it, so why won't you let the Board make that decision? Well, it's Petitioner's responsibility to file a motion to reopen. We're not talking about who files it. We're talking about what's the government's position? Regarding? Yeah, if they move to reopen saying the conviction's been vacated ab initio, what's the government's position? I personally don't think I'm in the position to make that determination, but I would like to point out that it's slightly unclear from the record why Petitioner's criminal conviction was vacated. All the more reason for the Board to take a close look at it, right? Pursuant to Petitioner filing a motion to reopen with the immigration judge. The practical problem is the time is run, and as I understand it, there are limitations on Petitioner's ability to go back to the Board. It doesn't have an automatic right to a motion to reopen at this point. Is that your understanding? That is correct. Petitioner has to request the immigration judge to respond to reopen this case. Or stipulate with the government. But the government's not willing to do that. Even though you acknowledge there's at least a possibility that the vacater was based on grounds that call into question the legitimacy of the conviction in the first place. Yes, Your Honor. Because the way the government sees it is Petitioner committed a new crime when he came into this country. Let me make it clear. I don't quarrel with the proposition there may be reasons to exclude this person. But to date, his exclusion has been based on a conviction, which at least according to the Court of Conviction doesn't exist anymore, and is void ab initio. That suggests to me that there are questions yet to be looked at. I'm fully in agreement with the proposition the agency should look at it. And that seems to be what you're arguing to us. But when we ask you how the petitioner should proceed along that road, you tell us the government will not stipulate a motion to reopen. And as a result, the petitioner has no automatic right to a motion to reopen. Can't be sure the agency will pick the question up. So there's a gap here. It seems to me there's something wrong with the system that doesn't permit the agency in question to look at the issue. But you're telling me the government wants the agency to close its eyes to the issue. Well, I mean, the government's of the position that these type of motions, arrest, it's a burden that petitioner carries. And it is his responsibility to do it in a timely fashion. Let's suppose that the – Let me just ask you one question. Is it not timely because it should have been sooner after the 2006 vacation or because it was never going to be timely? Well, it's not timely because there's a couple of interesting points to that question. First of all, petitioner – after reentering the United States in 1999, petitioner did not do – as far as the record before us, there's no evidence that petitioner did anything to challenge this order of removal or the underlying conviction until he was placed back into removal proceedings in 2002. So from the government's perspective, that shows a lack of initiative on the part of the alien to go back and attack this criminal conviction if it was in fact – So you would agree that the 2006 vacation, vacature was a new piece of evidence from which – which would have supported a motion to reopen at that point? I'm sorry, Your Honor. I would have supported a motion to reopen at that point. Your problem is that it was too late after the 2006 termination. It would have been too late any time after 1999. Quite possibly, Your Honor. I'm not sure. Well, usually motions to reopen have to be filed within – and I lose track, but it's 90 days. We're surely 90 days past the order of removal that followed the 1999 conviction. And so I hear your position as being it's too late. But the problem is the California court didn't set aside that conviction, granted ab initio, until 2006. So what exactly was the petitioner supposed to do to submit a timely motion to reopen if the California court didn't act for seven years? He didn't have a whole lot of options. And that's the problem we have today. The one option that seems to be available is to send it back to the agency, which is what I think I hear you advocating, except that the government's not prepared to join in opening the door for the agency to take it again. Well, that's true, and that's because the government's of the position that there needs to be some sort of finality, and that petitioner, if – Even if it's a finality based upon something that shouldn't have occurred in the first place? Your Honor, I don't know exactly what – That's the problem here. We don't know. We don't know whether the reason this conviction was vacated because the district – the superior court became convinced that the charges were trumped up or based on false evidence or based upon improper evidence or based upon improper advice of counsel. We just don't know. Why would a government oppose its agency finding that out? Because in this case, there's a separate and distinct basis for removal, and that was petitioner's illegal reentry into the country in 1999. Well, if the basis for his first removal is based upon a conviction that shouldn't have occurred in the first place, when he reentered, he was a lawful permanent resident, right? No, Your Honor. Actually, to enter the United States without inspection is a crime even for a U.S. citizen. So the fact that he came into the United States without being admitted or paroled is a valid basis for his removal now. Is that the basis? Is that a ruling the agency's made today? No, Your Honor, it's not. Can we rely on anything the agency hasn't done yet? We're supposed to adhere to the agency's reasons for decision, not to speculate as to what the agency might do. And you're asking us to speculate as to what the agency might do because you're saying there's still another reason for his removal, but the agency hasn't acted on that question. Isn't that a question that belongs before the agency? I'm a little confused by your question. You argue, and I understand this, that he's committed a separate crime. He shouldn't have come back when he did, and that may be by itself grounds under the immigration statute to order his removal. But that order hasn't been made by the agency. The agency has based its removal orders on something else. I think that's incorrect, Your Honor. The order of removal in this underlying petition for review is based on the charge of being found president of the United States without being removed. It was one of the charges, but the immigration judge pre-terminated the proceedings based upon the prior conviction being a crime of moral turpitude. That was one of many bases for pre-terminating. That's why he shut down and refused to consider the waiver. Your Honor, that's right, but that's also just a discretionary grant. Even if he had been completely eligible, it still would have been within the immigration judge's discretion to grant him. We don't know that. At the time of the immigration judge's hearing, this thing had already been vacated. In that instance, I understand what you're saying about the charge might still have been sustained because there was a removal order, and not only that, he did come back without inspection. But he would have been eligible for a waiver because the CIMT thing wouldn't have been a problem, right? That's right. He would have been eligible for I-212. But that's also, it would have had to have been granted non-protonic, and it was also completely within the immigration judge's discretion to. But he didn't exercise that discretion because he was operating on the basis that there was a valid CIMT. So, in other words, the CIMT, the conviction had a whole different impact here in this proceeding, not the earlier one. So it's relevant to this proceeding whether or not the conviction stands or doesn't exist anymore. Is that right? Yes, Your Honor. That is right. But I would say it's a very limited relationship. Well, it could end up with him being able to stay here instead of leaving. It is a possibility. Okay. You're out of time. Thank you for coming in this morning. I want to thank you for your argument. It was helpful. I appreciate it. Thank you. You have under a minute for a rebuttal. Thank you, Your Honor. Just very quickly, Your Honor, it's fairly obvious to the Court, and I believe certainly to Petitioner's counsel, that any effect or any attempt to reopen with the agency is probably going to be extremely futile. The Petitioner is essentially left with no recourse. But you really do put us in a bad position by not having tried. It would have been, I mean, both in terms of timeliness and in terms of exhaustion, the way to do this was to file a motion to reopen. And if you lose, you come here. But doing it this way, I'm not sure you haven't boxed us in. Well, Your Honor, we would ask the Court to consider the fact that the conviction has been vacated. It was collaterally attacked and successfully. We've not asked this Court to relitigate that issue or relitigate the fact that it was a CMT or an aggravated felony. And we would ask the Court to grant an order in this case that would be appropriate. Okay. Thank you. You're out of time. Thank you both for your arguments. Appreciate you coming to the law school today. The case just argued will be submitted for decision. And we'll proceed to the next case on the argument calendar, which is Zanger v. Pasadena.
judges: Hawkins, Berzon, Clifton